UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UBS AG, LONDON BRANCH,              :

                 Plaintiff,     :

     -against-                                         :     **ORDER**

GREKA INTEGRATED, INC.,             :     19-CV-10786 (LLS) (KNF)

                 Defendant.   :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

On October 21, 2019, the plaintiff, UBS AG, London Branch ("UBS"), commenced this action in state court by filing a motion for summary judgment in lieu of complaint pursuant to New York Civil Procedure Law and Rules § 3213, seeking an order:

> (i) granting Plaintiff summary judgment in lieu of complaint against Defendant Greka Integrated, Inc. on the First Lien Greka Integrated Guaranty Agreement and the Second Lien Greka Integrated Guaranty Agreement; (ii) awarding to Plaintiff judgment against Defendant in the amount of $100,000,000, the amount due to Plaintiff under the First Lien Greka Integrated Guaranty Agreement and the Second Lien Greka Integrated Guaranty Agreement, plus interest, costs, and fees thereon; (iii) awarding to Plaintiff all of its costs, charges and expenses, including attorneys' fees and disbursements, incurred in enforcing the First Lien Greka Integrated Guaranty Agreement and the Second Lien Greka Integrated Guaranty Agreement; and (iv) granting such other and further relief as is just and proper.

In support of its motion, the plaintiff submitted an affidavit by William W. Chandler ("Chandler"), a Managing Director of the plaintiff, dated October 21, 2019, with exhibits. The defendant removed the action to this court, opposed the motion for summary judgment in lieu of complaint and asserted counterclaims. In its opposition to the summary judgment motion, the defendant argued: (a) "The Guarantees Are Not Instruments for The Payment of Money Only and Are Not Subject to a CLPR 3213 Action"; (b) "UBS Has Not Made a Prima Facie Showing

1

of the Quantum of Damages or Its Entitlement to All Damages Sought"; (c) "A Dispute Exists as to the Quantum of Monies Owed and as to the Existence of Certain Obligations"; and (d) "Genuine Questions of Material Fact Exist as to Affirmative Defenses, Including Whether UBS Fraudulently Obtained the Guarantees."  The defendants' arguments included the following:

> Incorrect inclusion of amounts from financial instruments other than the Credit Agreements.  In its letters, UBS purports to be entitled to more than $650,000 in "Rincon Loan Advances and interest on Rincon Loan Advances (includes PIK)."  According to UBS, these Rincon Loan Advances are advances made under a different credit agreement with the Chapter 11 Case trustee for the estate of Rincon, not the Credit Agreements at issue in this case.  Pl.'s Chandler Aff. Ex. 11, Dec. 15, 2017 letter at 3 (D.I. 5-6 at 131).  As the Credit Agreements asserted by UBS as the basis for its claims in this action make no reference to any such 2017 Rincon Credit Agreement, and UBS has submitted no evidence or argument in support of any obligation of GIT arising out of amounts owed under any such credit agreement, they are not within the scope of the Guarantees, and are improperly included in this action.  Pl.'s Chandler Aff. Ex. 3; Pl.'s Chandler Aff. Ex. 4.

The plaintiff's motions for summary judgment and to dismiss the defendant's counterclaims were granted and the court found, in pertinent parts:

### Amount of Damages

> GIT argues that there is an issue of fact as to the amount of damages owed under the Guaranties. See HSBC Bank USA v. IPO, LLC, 735 N.Y.S.2d 531, 532 (App. Div. 2002) (the prima facie case for relief under CPLR § 3213 "requires documentary evidence or an explanation of how the indebtedness is calculated, other than in the form of mere conclusory allegations"). GIT cites UBS's letters notifying the Borrowers and GIT of the Borrowers' defaults to show that UBS fails to establish the amount of damages, fails to explain or provide documents showing how damages are calculated, overestimates the amount of principal and interest due, and seeks money owed under other agreements that are not part of this action.
> UBS's claim for damages in the amount of $100 million, plus interest, fees, and other costs due under the Credit Agreements, is supported by the documents. The Guaranties guarantee GIT's repayment of the two loans made to the Borrowers under the two Credit Agreements, in addition to "interest, fees, costs or charges." Guaranties § 2.01. The Credit Agreements state multiple times that each loan is in the amount of $50 million, for a total of $100 million. See Credit Agreements § 1.01 ("The aggregate amount of the Lenders' Commitments is $50,000,000."); id. § 2.01 ("all such Loans being equal to $50,000,000"); Chandler Aff. Exs. 6, 7 (Schedule

l.l(d) to the Credit Agreements lists "UBS AG, London Branch" as the sole "Lender" with a "Commitment" of $50,000,000).

The Credit Agreements also set forth how UBS's fees and interest should be calculated. See Credit Agreements § 2.05 (the Borrowers agree to pay UBS "the administrative fees payable in the amounts and at the times separately agreed upon" and "deferred closing fees. in the amounts at least equal to those set forth on Schedule 2.05"), id. § 2.06 (the loans "shall bear interest at a rate per annum equal to the Adjusted LIBOR Rate for the Interest Period in effect for such Borrowing plus the Applicable Margin in effect from time to time"). "That the rate of interest was not specifically set forth in the note does not render it any the less an instrument for the payment of money only." Schwartz v. Turner Holdings, Inc., 527 N.Y.S.2d 229, 230 (App. Div. 1988).

UBS attaches its letters to show that the Borrowers were in default and that they (and GIT) had notice of those defaults and that the full amount of the loans was due and payable. The numbers stated in the letters were the amounts of principal, interest, fees, and costs due at the time UBS sent each of those letters; UBS does not claim that it is owed those amounts now. Therefore, there is no genuine issue as to the amount of damages.

Docket Entry No. 38.

The matter was referred to the undersigned for "[c]alculation of interest, fees, and costs."

Docket Entry No. 39.

In support of its request for interest, fees, and costs, the plaintiff submitted Chandler's declaration, dated July 10, 2020, with exhibits. The plaintiff seeks the following:

| ELEMENT | SUM |
|---|---|
| Unpaid Interest on First Lien Credit Agreement Principal | $101,427,656.27 |
| Unpaid Interest on Second Lien Credit Agreement Principal | $19,446,933.45 |
| Unpaid Administrative Agent Fees plus Interest | $394,071.81 |
| Unpaid Deferred Closing Fees plus Interest | $1,817,488.34 |
| Unpaid Performance Payments plus Interest | $1,742,987.12 |
| Advisory and Collateral Management Fees | $2,138,513.11 |
| Legal Fees and Costs | $8,755,662.40 |
| RILP Trustee Credit Agreement plus Interest | $708,712.23 |
| HVICC Trustee Credit Agreement plus Interest | $13,078,542.38 |
| TOTAL | $59,510,567.12 |

3

The plaintiff's submissions to the Court in connection with the order referring the matter to the undersigned for "[c]alculation of interest, fees, and costs" include evidence that was not before the assigned district judge on a motion for summary judgment in lieu of the complaint, and the plaintiff seeks fees never mentioned in its motion for summary judgment in lieu of the complaint. For example, although the plaintiff's letters to the defendant, attached as exhibits to Chandler's October 21, 2019 affidavit in support of the motion for summary judgment in lieu of the complaint, indicate that the plaintiff listed amounts due to it under the category "Rincon Loan Advances and interest on Rincon Loan Advances (including PIK)," no reference was made in those letters to or evidence provided in support of the motion for summary judgment in lieu of the complaint for the basis on which this category of money is requested. Presumably, the category "Rincon Loan Advances and interest on Rincon Loan Advances (including PIK)" is based on Exhibit 13, "the RILP Trustee Credit Agreement" dated August 21, 2017, attached to Chandler's July 10, 2020 declaration before the Court. However, the plaintiff's summary judgment in lieu of the complaint did not include, mention or discuss "the RILP Trustee Credit Agreement."

Similarly, the plaintiff's summary judgment in lieu of the complaint did not include any: (i) trustee loan agreement between the plaintiff and HVICC; (ii) mention of any HVICC trustee loan agreement in the plaintiff's letters to the defendant submitted in support of the motion for summary judgment in lieu of the complaint; (iii) mention of any HVICC trustee loan agreement in the plaintiff's memorandum of law in support of the summary judgment; or (iv) mention of advances the plaintiff made to the HVICC trustee. However, the plaintiff asserted in the instant submissions that "[o]n July 7, 2020, the Court in the HVICC bankruptcy entered an order that, among other things, reflected that UBS had advanced $10,498,357 to the HVICC Trustee as of

4

June 18, 2020," and submitted (i) Exhibit 14, "the HVICC Trustee Credit Agreement" dated November 8, 2019, and (ii) Exhibit 20, "the Second Amendment to the HVICC Trustee Credit Agreement" dated January 3, 2020.

The plaintiff did not include or mention, in its October 21, 2019 motion for summary judgment in lieu of the complaint, "the HVICC Trustee Credit Agreement" dated November 8, 2019, and "the Second Amendment to the HVICC Trustee Credit Agreement" dated January 3, 2020, because they post-date it. However, it is not clear to the Court why the plaintiff failed to include "the RILP Trustee Credit Agreement" dated August 21, 2017" or mention it in its October 21, 2019 motion for summary judgment in lieu of complaint.

Since the assigned district judge determined the October 21, 2019 motion for summary judgment in  lieu of complaint without the benefit of: (1) "the RILP Trustee Credit Agreement" dated August 21, 2017" or any mention of it in the motion papers or supporting evidence; (2) "the HVICC Trustee Credit Agreement" dated November 8, 2019; and (3) "the Second Amendment to the HVICC Trustee Credit Agreement" dated January 3, 2020, the Court is not convinced that the defendant's liability has been determined in connection with its request for the "RILP Trustee Credit Agreement plus Interest" and "HVICC Trustee Credit Agreement plus Interest." Similarly, it is not clear to the Court that the defendant's liability has been determined with respect to all specific categories of the plaintiff's requests enumerated and discussed in the plaintiff's memorandum of law, Docket Entry No. 42, and the plaintiff's reply memorandum of law, Docket Entry No. 61.

For the foregoing reasons, on or before February 15, 2021, the parties are directed to seek clarification from the assigned district judge concerning the defendant's liability <u>with respect to each specific category of damages the plaintiff seeks</u> in its submissions to the Court based on the

5

order of reference for the "[c]alculation of interest, fees, and costs," Docket Entry No. 39.

Dated:  New York, New York
       February 1, 2021

SO ORDERED:

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

6